John F. Kurtz, ISB No. #2396
Thomas J. Mortell, ISB No. 5135
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.388.4929
Facsimile: 208.954.5245
Email: jkurtz@hawleytroxell.com
       tmortell@hawleytroxell.com

Austin T. Strobel, ISB No. 9803
HAWLEY TROXELL ENNIS & HAWLEY LLP
2010 Jennie Lee Drive
Idaho Falls, ID 83404
Telephone: 208.529.3005
Facsimile: 208.529.3065
Email: astrobel@hawleytroxell.com

Attorneys for Plaintiff Homestyle Direct LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOMESTYLE DIRECT LLC, an Idaho limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>ASSOCIATED PACKAGING, INC., a Tennessee corporation,<br><br>    Defendant. | Case No.<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

The Plaintiff, Homestyle Direct LLC, through counsel of record, Hawley Troxell Ennis & Hawley LLP, complains against the Defendant, Associated Packaging, Inc., as follows:

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

## PARTIES

1. Plaintiff Homestyle Direct LLC ("HSD" or "Plaintiff") is a limited liability company organized under the laws of Idaho and authorized to do business in the state of Idaho and a resident of Twin Falls County, Idaho.

2. Defendant Associated Packaging, Inc. ("Associated" or "Defendant") is a corporation organized under the laws of Tennessee, with its principal place of business in Texas. Associated is authorized to do business in Idaho.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Defendant pursuant to Idaho Code § 5-514(a) and Fed. R. Civ. P. 4(k)(1)(A).

5. Venue is proper in this federal district pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

6. HSD is in the business of preparing and shipping/delivering high quality meals for patients at hospitals and other health care facilities. HSD also delivers meals to Medicaid recipients at their homes. Many of HSD's clients are elderly, homebound, and/or disabled.

7. Associated is in the business of providing packaging solutions for businesses to package products, including the sale of meal trays.

8. In December 2015, HSD and Associated entered into a requirements contract ("Original Contract") for the purchase of meal trays used by HSD for the meals provided to its clients. The original term of the contract ran from December 1, 2015 to December 31, 2016.

9. The Original Contract obligated Associated to provide HSD with Tray Item #3506125G600, a tray which is described as having the dimensions of 2.4"x6.6"x5.0" ("Original Sabert Tray"). On information and belief, this tray is supplied to Associated by its vendor partner, Sabert.

10. The parties renewed the Original Contract for a subsequent term, running from January 1, 2017 to January 31, 2018 ("Renewed Contract"). As with the Original Contract, the Renewed Contract also obligated Associated to provide the Original Sabert Tray.

11. In the first ten (10) months of the Original Contract, HSD purchased an average of 273 cases of the Original Sabert Trays per month with each case containing 600 trays. HSD spent an average of $26,000 per month for these trays.

12. In reliance on its contract(s) and relationship with Associated, HSD made important business decisions based on that specific choice of tray. HSD production equipment was manufactured to fit the Original Sabert Tray and the sealing process was tied to the size of the Original Sabert Tray. Importantly, that tray was made of materials that allowed HSD customers to heat their food in the tray. HSD experienced very few problems with the Original Sabert Tray.

13. Up until December 2016, Associated provided HSD with meal trays that conformed to the requirements of the parties' Original Contract and Renewed Contract. Further, up until December 2016, the meal trays provide by Associated were fit for the known particular use and purpose for which HSD had purchased the trays.

14. Beginning in December, 2016, Associated was unable to provide the Original Sabert Tray specified in the Original Contract and Renewed Contract. On information and belief, this was due to manufacturing difficulties at Sabert.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

15. In lieu of the Original Sabert Tray, Associated began sending replacement trays. Associated's invoice to HSD dated December 30, 2016 shows that instead of receiving its usual monthly shipment of 200 or more of the Original Sabert Trays, HSD received: (1) 24 cases of the Original Sabert Tray; (2) 198 cases of a substitute Mullenix tray, item no. MX-5066-21 ("Mullenix Tray"); and (3) 91 cases of a substitute Sonoco tray, with an item no. 672/CS ("Sonoco Tray").

16. The substitute Sonoco Trays, while not meeting the specifications of the parties' Original Contract or Renewed Contract, were generally an adequate replacement for the Original Sabert Tray. However, there were some issues with some Sonoco Trays which were damaged during delivery and therefore unusable when the cases of trays were opened. This issue caused HSD to expend extra time and effort sorting through which trays were usable and which were not.

17. Further, the Sonoco Tray was not widely available for delivery by Associated and was therefore not an adequate substitute for all of HSD's needs.

18. The substitute Mullenix Trays did not meet the specifications of the parties' Original Contract or the Renewed Contract.

19. The substitute Mullenix Trays were not fit for the particular purposes for which HSD purchased the Original Sabert Trays.

20. The Mullenix Trays were not compatible with HSD's sealing equipment causing many of the containers to not properly seal and often requiring that the meal be run repeatedly through the sealing machine. This led to production downtime and a waste of sealing film.

21. The Mullenix Trays were too shallow and did not have sufficient capacity to hold the portion size of some meals. This resulted in meals being delivered in unsealed and spilled conditions, requiring a refund to the client and the shipping of a replacement meal.

22. HSD immediately notified Associated of the problems with the Sonoco and Mullenix Trays.

23. In the timeframe of January 2017 to February 2017, representatives of Associated and Sabert repeatedly assured HSD that the production of the Original Sabert Tray would soon resume. In the meantime while HSD waiting for those assurances to be fulfilled, HSD was left with no other option than using at least some of the defective Mullenix Trays for the first two months of 2017.

24. Beginning with Associated's March 31 shipment, Associated began shipping to HSD a tray (the "Replacement Sabert Tray") that was represented to be the same tray as the Original Sabert Tray. On Associated's March 31 invoice, this tray was listed with the same description, item number, and dimensions as the Original Sabert Tray.

25. Despite this representation, the Replacement Sabert Tray was clearly not the Original Sabert Tray. Out of the case, many of these trays were defective. On the front end of the sealing process, HSD was forced to sort through and discard an unusually large number of these replacement trays. These trays were also unusable for HSD purposes. The trays were not sturdy, some were deformed, and many melted when the food was reheated. As a result, HSD was again forced to address these issues with Associated. HSD also received shipments of these defective Replacement Sabert Trays in April and May 2017.

26.     In May 2017, HSD abandoned the use of the non-conforming Replacement Sabert Tray. At that point and continuing to the present, Associated has been providing HSD with the Sonoco Tray.

27.     Throughout the December 2016 through May 2017 timeframe, HSD reasonably relied on Associated and its suppliers to supply a tray that was suitable for HSD's uses and that met the terms of HSD's Original Contract and Renewed Contract with Associated.

28.     From December 2016 through May 2017, Associated failed to provide HSD with trays that conformed to the specifications of the parties' Original Contract and Renewed Contract.

29.     From December 2016 through May 2017, Associated failed to provide HSD with trays that conformed to the particular purpose and uses for which HSD had purchased the Original Sabert Tray.

30.     From December 2016 through May 2017, Associated failed to provide HSD with an adequate substitute for the Original Sabert Tray.

31.     As a result of these breaches and failures, HSD has suffered damages in an amount to be proven at trial in excess of $698,000.

32.     The Original Contract and Renewed Contract between HSD and Associated are contracts for the sale of goods, namely, meal trays and are governed by Idaho's Codification of Article 2 of the Uniform Commercial Code ("UCC"). *See* Idaho Code § 28-2-105(1).

## FIRST CAUSE OF ACTION
### (Breach of Contract)

33.     HSD incorporates all prior paragraphs as if fully set forth herein.

34.     Both the Original Contract and Renewed Contract specifically designate that Associated is to provide HSD with Tray Item #3506125G600 (i.e., the Original Sabert Tray).

35. During the months of December 2016 through May 2017, Defendant breached this provision of the Original Contract and Renewed Contract by failing to provide the Original Sabert Tray.

36. As a direct result of this breach, HSD has suffered damages in excess of $698,000 in an amount to be proven at trial.

37. As a result of this breach, HSD has also suffered consequential damages in excess of $698,000 in an amount to be proven at trial in the form of foreseeable interference with its customer relationships with its clients, future lost profits, and interference with future business opportunities with clients.

## SECOND CAUSE OF ACTION
### (Breach of Warranty)

38. HSD incorporates all prior paragraphs as if fully set forth herein.

39. In entering into both the Original Contract and Renewed Contract, Associated was aware of the particular use and purpose for which HSD intended to put the trays – namely, for use in packaged and shipped and/or delivered meals for patients of hospitals and other health care providers, and for packaged and shipped and/or delivered meals for elderly or disabled homebound Medicaid recipients.

40. HSD relied on Associated's reputation, skill, and judgment to provide suitable trays for this purpose.

41. Associated therefore impliedly warranted to HSD that meal trays provided would be fit for this particular purpose.

42. Associated breached this implied warranty during the timeframe of December 2016 through May 2017 by failing to provide the designated Original Sabert Tray or an adequate substitute fit for HSD's intended purpose.

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

43. As a direct result of this breach, HSD has suffered damages in excess of $698,000 in an amount to be proven at trial.

44. As a result of this breach, HSD has also suffered consequential damages in excess of $698,000 in an amount to be proven at trial in the form of foreseeable interference with its customer relationships with its clients, future lost profits, and interference with future business opportunities with clients.

### THIRD CAUSE OF ACTION
### (Promissory Estoppel)

45. HSD incorporates all prior paragraphs as if fully set forth herein.

46. Associated represented and promised to provide HSD with Tray Item #3506125G600 (i.e., the Original Sabert Tray), a tray fit for a particular intended purpose.

47. HSD reasonably relied on this representation and promise. Specifically, HSD production equipment was manufactured to fit the Original Sabert Tray and the sealing process was tied to the size of the Original Sabert Tray.

48. Such reasonable reliance was to HSD's detriment during the months of December 2016 to May 2017, when Associated failed to provide conforming trays compatible with HSD's production equipment or with the particular purpose for which the trays were intended.

49. As a direct result of this reasonable, detrimental reliance, HSD has suffered damages in excess of $698,000 in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, HSD prays for judgment as follows:

1. For its direct damages in excess of $698,000 in an amount to be proven at trial.

2. For its consequential damages in excess of $698,000 in an amount to be proven at trial.

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

3. For recovery of costs and reasonable attorneys' fees pursuant to applicable law including, but not limited to, Idaho Code § 12-120(3).

4. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, HSD demands a trial by jury on all issues triable by jury.

DATED this 22 day of December, 2017.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By: _____
Thomas J. Mortell, ISB No. 5135

Attorneys for Plaintiff Homestyle Direct LLC

COMPLAINT AND DEMAND FOR JURY TRIAL - 9